JUDGE ROBERTSON
delivered the opinion op the court:
General John H. Moi’gan, of the Confederate army, having penetrated Kentucky with a strong military force and captured Cave City, near the Louisville and Nashville railroad, on the 10th day of May, 1862, awaited the transit of the train, and, on the same day, with the coerced co-operation of the appellant, and other soldiers under his command, burnt a locomotive and two *406 passenger cars, and destroyed or materially damaged several other cars, for which the appellee sued the appellant as a trespasser, and recovered a judgment for fifteen thousand dollars, which, by this appeal, he seeks to reverse.
Waiving all consideration of several preliminary objections as not needful, we must reverse the judgment for radical error in instructing and refusing to instruct the jury, and in overruling a motion for a new trial sought on that ground, and also on the ground that the verdict was against the law and evidence of the case.
That the insurgent party in a civil war has some belligerent rights is neither denied nor consistently deniable; nor can a jurist deny that, on the 10th of May, 1862, the rebellion had matured into an actual and universally recognized civil awar. And it was so adjudged by this court, not only in the case of Bland vs. The Adams Express Company (1 Duvall), but also unanimously by the supreme court of the United States in the prize cases reported in 2 Black.
■ We need not here discuss the question whether both parties to a civil war have co-equal belligerent rights, nor the question whether or how far there may be any authoritative discrimination between belligerent rights in a civil and those in an international war; for the admitted laws of all civilized warfare entitle each party in a civil war to the same right of capture or destruction of enemy’s property, and show that when either the capture or destruction of property by one of such belligerents is lawful, it is equally lawful by the other; and, if unlawful by one, it would be equally so by the other.
In his treatise on the laws of war, Halleck (chap. 19, sec. 22,p. 464) says: “While there is some uncertainty as *407 to the exact limit fixed by the voluntary law of nations as to our right to appropriate to our own use the property of an enemy, or to subject it to military contributions, there is no doubt whatever respecting its waste and useless destruction. This is forbidden alike by the law and the rules of war. But if such destruction is necessary in order to cripple the enemy or to insure our own success, it is justifiable. We may destroy provisions or forage in order to cut off the enemy’s subsistence ; but we cannot destroy vines and cut down fruit trees without being looked upon as savage barbarians. We may demolish fortresses, ramparts, and all structures solely devoted to the purposes of war; but we cannot destroy public or private edifices of a civil character, temples of religion and monuments of art, unless their destruction become necessary in the operations of a siege, or in order to prevent affording a lodgment or protection to the enemy.” Perfectly coincident with the same doctrine is the following extract from the decision of the supreme court in the prize cases: “ The right of one belligerent not only to coerce the other by direct force, but also cripple his resources by the seizure or destruction of his property, is a necessary result of a state of war.”
Vattell, in his Law of Nations, book 3, chapter 18, section 295, says : “ A civil war breaks the bonds of society and government, or at least suspends their force and effect; it produces in the nation two independent parties, who consider each other as enemies, and acknowledge no common judge. These two parties must therefore necessarily be considered as constituting, at least for a time, two separate bodies — two distinct societies — having no common superior to judge between them. They stand in precisely the same predicament as two nations who en *408 gage in a contest and have recourse to arms. This being the case, it is very eAÚdent that the common laAvs of Avar, those maxims of humanity, moderation, and honor, ought to be observed by both parties in a civil war.”
Wheaton, Lawrence’s ed.,p. 521, speaking of a civil war, says: “ The general usage of nations regards such a war as entitling both the contending parties to all the rights of war.” And, in another place, he says : “ They decide their quarrel by arms as two different nations would do. The obligation to observe the common laws of war towards each other is therefore absolute, indispensably binding on both parties, and the same ichich the laws of nations impose on all nations'in transactions between State and State.”
On the principle of equality thus recognized, the decisive question in this case is, whether the destruction of the cars by Morgan’s authority was a wanton waste, or Avas for crippling his enemy and cutting off his supplies; and the facts authorize the deduction that it was done for the latter and legitimate purpose.
Gen. Buell’s Federal army, then occupying Tennessee, confronted on the south by Bragg’s Confederate army, depended chiefly for transportation of troops and supplies of munitions and provisions on the Louisville and NashArille railroad. To cut off or obstruct this indispensable avenue of supplies was an obvious stroke of southern policy to compel Gen. Buell to fall back on Kentucky and thus make her the seat of war.
This railroad was then, and for some time had been, transporting troops and other supplies to Gen. Buell, and some of the cars thus used belonged to the Federal Government.
How,- then, can we doubt that the act complained of in this suit was, according to the laws of civil war, a lawful *409 exercise of a belligerent right? We cannot resist that conclusion.
Nor can this court admit that the legislative act of February 22,1864, “ to provide a remedy for injuries done by. disloyal persons,” constructively applies, or was intended to apply, to the facts of this case. In the range of its literal import, it applies no more to citizens of Kentucky than to those of other States; and, therefore, if it could not be legally enforced against citizens of other States exercising belligerent rights in the Confederate army, we should presume that it was not intended to apply to the belligerent rights of citizens of Kentucky in the same army, and which are all alike regulated by national law and the national will, which the will of Kentucky could neither modify, control, nor frustrate as to any belligerent, citizen or no citizen. She might enforce penalties, even to partial disfranchisement, against her own citizens for joining or aiding the cause of the revolting Confederates. But, after they, nevertheless, became constituent elements of the Confederate army, the national law defined their belligerent rights, and made them equal with those of all other portions of that army, including alike all its elements. Over these rights of war no State has any right to interfere. And if one State might do so, every other State might do so, and thereby the conflicting laws of the States, and not uniform laws of the nation, might be made the laws of war, in the prosecution of which no State has any sovereign authority; and we so decided in the case of Price and Price vs. Poynter.
We therefore construe the statute as applying, and intended to apply, only to wrongs done without the protective sanction of belligerent right.
In the state of case as thus outlined, the court gave to the jury the following instruction :
*410 “If the jury believe from the evidence in this case that the defendant Bell set fire to plaintiff’s car and other property, from which the same was destroyed, or was present and aided in doing so, they should find for the plaintiff such damages as was sustained by the destruction so done, unless they further believe that said defendant was forced against his will to join Morgan’s forces, and done what he did towards the burning, if anything, by compulsion.”
And refused to give the following instruction asked by the appellant:
“ If the jury believe from the evidence that W. F. Bell set fire to the cars of plaintiff, but believe that he was a soldier of the so-called Confederate army, and was acting in obedience to the command of his superiors, John Morgan and others, and believe that plaintiff was employed by the United States government in May, 1862, for carrying ammunition, implements of war, soldiers, and provisions, to United States army, they will find for the defendant, W. F. Bell.”
Tested by the foregoing facts and principles as herein recognized, the circuit court erred in giving the first instruction, and also in refusing the last. And, moreover, the law and evidence, which ought to have controlled the verdict, did not authorize that on which the judgment was pronounced; and, consequently, the court erred in overruling the appellant’s motion for a new trial.
For reasons suggested in Price and Price vs. Pointer, Judge Williams does not concur in this opinion.
Wherefore (Judge Williams dissenting), the judgment is reversed, and the cause remanded for a new trial.